IN THE SUPREME COURT OF MISSISSIPPI
NO. 96-CT-00287-SCT

*CALVIN WINSTON a/k/a JAMES CALVIN WINSTON*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/96 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT McDUFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | NOEL D. CROOK |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 11/24/1999 |
| MOTION FOR REHEARING FILED: | 11/24/99; denied 2/17/2000 |
| MANDATE ISSUED: | 2/24/2000 |

## EN BANC.

## SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:

¶1. Calvin Winston was convicted of capital rape under Miss. Code Ann. § 97-3-65(1) (1994),[(1)] i.e., carnal knowledge of a child under the age of fourteen by a person eighteen years of age or older. He was sentenced to serve six years in prison with one year suspended. The Court of Appeals affirmed the conviction but found that the matter should be remanded for sentencing in accordance with Miss. Code Ann. § 97-3-65(1) (1994), which provides for a sentence of either death or life in prison. *Winston v. State*, 726 So. 2d 197 (Miss. Ct. App. 1998). Because the decision of the Court of Appeals to sua sponte review and vacate Winston's sentence is in conflict with a prior published opinion of this Court, the judgment of the Court of Appeals as to sentencing must be reversed and rendered. We therefore order that Winston's conviction be affirmed and that the trial court's sentence in this case be reinstated.

### STATEMENT OF THE FACTS

¶2. On June 17, 1994, a thirteen-year-old girl went to the home of Calvin Winston, a friend of her family. The girl testified that Winston fondled her breasts and dragged her to a bedroom where she was forced to

engage in sexual intercourse. The victim's mother, sister, and brother-in-law testified that they went to Winston's home looking for the girl but Winston told them that she was not there. After the child's voice was heard from the back of the house, Winston returned with the girl whose clothes were disheveled. Initially, the girl denied that Winston had engaged in sexual relations with her, instead telling her mother that she had been in the back using the bathroom. Her mother testified that she hit the girl, because she knew that she was not telling the truth, because she was crying. After her mother hit her, the girl responded that yes, Winston had "messed with" her.

¶3. Responding police officers testified that the girl's pants and shirt were open, exposing her breasts, and that she was not wearing her bra. Dr. Patrick McLain testified that he examined the victim, completing a rape examination kit, and concluded that she had engaged in intercourse in the preceding hours. However, results from the crime lab tests on the victim's rape kit and Winston's sexual assault evidence kit produced no matching hairs or seminal fluid to connect Winston to the victim. Winston took the stand in his own defense and denied the accusations. Calvin Winston, age 67, was convicted of raping the thirteen-year-old girl and was sentenced to a six year prison term with one year suspended. The remaining five years were to be served without parole.

¶4. Winston appealed, and the case was assigned to the Court of Appeals. The Court of Appeals affirmed the conviction, finding that the verdict was supported by the victim's testimony and corroborating police and medical testimony, that the trial court did not err in refusing to instruct the jury to scrutinize the uncorroborated testimony of a rape victim, and that trial counsel was not ineffective. However, on its own, the Court of Appeals reversed Winston's sentence, finding it to be less than the statutory minimum. Winston filed a Petition for Rehearing which was denied. He subsequently filed a timely Petition for Writ of Certiorari with this Court, which was granted on August 12, 1999.

## STATEMENT OF THE LAW

### I.

### WHETHER A NEW TRIAL IS REQUIRED BASED UPON THE WEIGHT OF THE EVIDENCE, IN LIGHT OF THE COURT OF APPEALS'S ERRONEOUS HOLDING THAT THE SEMINAL FLUID FOUND ON THE VICTIM WAS LINKED TO THE DEFENDANT THROUGH BLOOD-TYPE MATCHING.

¶5. The record does not support the finding of the Court of Appeals that Winston was linked by blood-type matching to the semen sample taken from the victim. Winston argues that without this physical evidence or any matching hairs found on the victim to link Winston to the victim, the weight of the evidence did not support the jury's verdict in this case, requiring reversal for a new trial. However, Detective Robert Adam testified that in rape cases it is not unusual for the rape kit to produce no matching results.

¶6. Winston also points to the testimony of Benita Cage that only one minute lapsed between her leaving Winston alone with the victim and hearing the victim's mother yelling at Winston's house. The time frame estimated by Cage does not contradict the testimony of the victim and her mother, who testified that Winston did not stop and answer the door until several minutes after the victim's mother began knocking on his door. Moreover, any discrepancies in the witnesses' testimony regarding the time frame is to be expected considering the emotional nature of the event and the nineteen-month lapse in time between the rape and the trial. These differences in testimony do not discredit or contradict the victim's testimony that

Winston raped her.

¶7. Winston also points to the victim's initial denial that Winston had sex with her, the victim's admission that Winston "messed with" her occurring only after her mother hit her. The victim and her mother both testified regarding the victim's initial denial of the assault, and both were subject to cross-examination. As the Court of Appeals held, the credibility of the witnesses' testimony and resolution of conflicting testimony was for the jury to determine. *Collier v. State*, 711 So. 2d 458, 462 (Miss. 1998). Taking the testimony of the victim, her relatives, police, and the examining doctor in the light most favorable to the State, the jury's finding that it was Winston with whom the victim had intercourse was not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *White v. State*, 732 So. 2d 961, 965 (Miss. 1999) (quoting *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997)). We find that the Court of Appeals properly affirmed Winston's conviction.

## II.

### WHETHER THE COURT OF APPEALS HAS THE AUTHORITY TO SUA SPONTE INCREASE A SENTENCE IMPOSED BY THE TRIAL COURT WHERE THE STATE DOES NOT RAISE SENTENCING AS AN ISSUE.

¶8. The decision by the Court of Appeals to vacate Winston's sentence and remand his case for resentencing is in conflict with this Court's recent decision in *Lester v. State*, No. 96-CT-01072-SCT, 1999 WL 444605 (Miss. July 1, 1999). In that case, Stanley Lester was convicted of being an accessory before the fact to the capital rape of a thirteen year old and was sentenced to eight years in prison. *Lester*, 1999 WL 444605 at ¶¶ 1-2. The Court of Appeals affirmed the conviction but vacated Lester's sentence and remanded his case for re-sentencing in conformity with the statute. *Id*. at ¶ 1. Lester's sentence was not assigned as error by the State or by Lester on appeal. *Id*. at ¶ 11. We held that the Court of Appeals erred in vacating Lester's sentence and reversed and rendered the decision of the Court of Appeals as to sentencing. *Id*. at ¶ 12.

¶9. In the present case, the State similarly filed no cross-appeal challenging the length of Winston's sentence. The Court of Appeals reviewed the sentence sua sponte in conflict with the *Lester* decision. As a result, we reverse and render the judgment of the Court of Appeals as to sentencing in this case.

## III.

### WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT IT COULD FIND THE DEFENDANT GUILTY EVEN IF THE VICTIM CONSENTED, SINCE THE LANGUAGE OF THE STATUTE IN EFFECT AT THE TIME DID NOT STATE THAT SUCH CONSENSUAL SEX IS A CRIME.

¶10. Without having raised this issue in the trial court or on direct appeal, Winston argues in his supplemental brief on writ of certiorari that the trial court erred by instructing the jury that it could find Winston guilty regardless of whether it found that the victim consented. Winston's position is that because the statutory language providing that "[n]either the victim's consent nor the victim's lack of chastity is a defense" was not added to Miss. Code Ann. § 97-3-65(1)(c) (Supp. 1999) until after the date of the offense in this case, consent is a viable defense for Winston. We disagree.

¶11. We have previously held that where the victim is under the age of consent as defined in § 97-3-65(1),

"it was not material whether the rape was accomplished by force or violence and against the will of the child. Consent is no defense to the charge." ***McBride v. State***, 492 So. 2d 581, 584 (Miss. 1986). Winston's claim is both procedurally barred and without merit.

## CONCLUSION

¶12. We agree and affirm with that portion of the judgment of the Court of Appeals affirming Winston's conviction of capital rape in this case. However, we reverse and render the judgment of the Court of Appeals as to sentencing, because the decision is in conflict with a prior opinion of this Court. The sentence imposed by the trial court is reinstated in this case.

¶13. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, MILLS, WALLER AND COBB, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**

1. Revised, effective from and after July 1, 1998.